UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| B.J., and T.J. and J.J., Individually and as next friends of B.J., ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 13 C 2585 |
| HOMEWOOD FLOSSMOOR CHSD #233, ) DR. VON MANSFIELD, in his Official ) Capacity as Superintendent; ILLINOIS STATE ) BOARD OF EDUCATION; CHRISTOPHER ) KOCH, in his Official Capacity as State ) Superintendent, ) ) | Judge Joan B. Gottschall |
| Defendants. ) | |

## MEMORANDUM OPINION & ORDER

The plaintiffs in this case are B.J., a sixteen-year-old student in Defendant Homewood Flossmoor Community High School District #233 ("the District"), and T.J. and J.J., next friends of B.J. They bring suit under the Individuals with Disabilities Education Act ("the IDEA"), 20 U.S.C. § 1400 *et seq.*, which requires states to provide a "free appropriate public education" to disabled children in exchange for federal funding. The plaintiffs challenge the appropriateness of the residential treatment placement that the District proposed to further B.J.'s individual education plan ("IEP"). Specifically, they appeal the ruling of an Impartial Hearing Officer (IHO), which followed a special education due process hearing held pursuant to the IDEA. The plaintiffs also bring a claim pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), alleging discrimination by the Illinois State Board of Education ("ISBE") and State Superintendent Christopher Koch against students with severe obsessive compulsive disorder ("OCD").

Now before the court is the plaintiffs' motion to supplement the administrative record with respect to the IDEA claim and to conduct discovery with respect to the Rehabilitation Act claim. For the reasons explained below, the motion is granted.

### I. BACKGROUND

B.J. is a special education student diagnosed with OCD, which has become more severe over time. According to the complaint, although B.J. is very intelligent, his OCD is now so severe that he performs rituals related to contamination and symmetry for the majority of each day, rendering him unable to complete school-related tasks. He has been unable to participate in a school setting for the past two years.

The District created an IEP for B.J. in 2010. Although homebound instruction was first attempted, B.J. was unable to complete class assignments and earned few high-school credits. The IEP was reviewed and revised in May 2011. The District recommended a therapeutic day school placement, but the plaintiffs did not believe that any private day programs existed that could address B.J.'s needs. At an April 2012 IEP meeting, the IEP team determined that B.J. needed a residential placement. The plaintiffs agreed.

The District and the plaintiffs differed, however, as to what residential program was appropriate for B.J. The plaintiffs proposed that B.J. attend a short-term residential program at the Child and Adolescent Center at Rogers Memorial Hospital in Wisconsin that provides therapy for OCD ("the OCD Center"). The OCD Center offers Exposure Response Prevention ("ERP") therapy, a form of cognitive behavior therapy. The District refused the plaintiffs' proposed placement but proposed various other placements. Two of those centers—Yellowstone Boys and Girls Ranch in Billings, Montana, and Acadia Montana in Butte, Montana—accepted B.J. into their programs.

2

Pursuant to the IDEA, states must provide a formal process for parents to seek administrative review of "any matter relating to the . . . provision of a free appropriate public education" to a child with a disability. 20 U.S.C. § 1415(b)(6)(A). When a complaint is made, the parents "shall have the opportunity for an impartial due process hearing." 20 U.S.C. § 1415(f)(1)(A). On August 8, 2012, the plaintiffs requested an impartial due process hearing before the IHO. The relief they sought was placement at the OCD Center or another appropriate residential program, payment for transportation to and from the OCD Center, and compensatory educational services to enable B.J. to complete high school.

The due process hearing before the IHO was held on October 16-18, and November 12, 2012. The plaintiffs called as witnesses B.J.'s mother, an educational consultant, a psychiatrist, a therapist, the director of the OCD Center, and numerous District personnel, including teachers, tutors, counselors, and the current and former special education directors. The District additionally called the Principal of Acadia Montana and the Admissions Director of Yellowstone Boys and Girls Ranch (Compl. Ex. A (IHO Decision) 3-4, ECF No. 1.) The witness from Yellowstone Boys and Girls Ranch testified that its program currently had two students with OCD, although those students did not have symptoms similar to B.J.'s. Yellowstone's curriculum included 350 minutes of daily instruction. The OCD Center's clinical director testified that its primary goal was not academic instruction, and that ERP therapy made up 85% of the program, while students participated in a classroom setting for 90 minutes a day.

The IHO issued a decision on November 29, 2012, denying relief for the plaintiffs. The IHO found that B.J.'s needs had grown worse since his 2010 IEP, that the homebound instructors provided by the District had not been provided with training or support to address his OCD, and that the IEPs the District had created for B.J. were significantly deficient. But given B.J's severe

OCD, which would have made any goals set out in the IEPs difficult to realize, the IHO found that the deficiencies did not deprive B.J. of any educational benefit. (*Id*. at 22.)

Turning to the question of whether the school district had provided B.J. with an appropriate placement in a private residential facility after April 2012, the IHO found that ERP therapy was necessary to implement B.J.'s IEP. (*Id*. at 26.) The IHO found that Acadia Montana would not be able to assist B.J. in accessing an education because it could not provide the appropriate therapy. (*Id.* at 27.) As to Yellowstone Boys and Girls Ranch, the IHO noted that "the question is much closer," and he could not "say that Yellowstone is an inappropriate facility." (*Id.* at 28.) The IHO ordered the District to submit additional evidence regarding training in ERP therapy received by Yellowstone staff. He stated that B.J. "should be provided up to 30 hours per week of ERP therapy." (*Id.*) The IHO further concluded that the OCD Center was not a "primarily educational" facility and that B.J.'s progress there would not be judged by his educational achievement, making the OCD Center an inappropriate placement. (*Id.* at 29.)

Following the hearing, the District submitted evidence to the IHO on December 27, 2012, indicating that although no Yellowstone staff member had been trained in ERP therapy, the District planned to pay for a Yellowstone staff member to attend a three-day training offered by the International OCD Foundation in January 2013. That staff member would then train other staff at Yellowstone to provide ERP therapy. The plaintiffs were not allowed to respond to the District's submission of this evidence. (Compl. Ex. B (Order on Parents' Request for Clarification), ECF No. 1.)

A party aggrieved by the findings and decision resulting from an impartial due process hearing may bring a civil action in federal court. 20 U.S.C. § 1415(i)(2)(A). The plaintiffs have filed such an action and allege in their complaint before this court that the IHO's decision should

4

be overturned because the IHO's factual findings were clearly erroneous and failed to give proper weight to the evidence presented during the due process hearing, and because the plaintiffs were not allowed to respond to the evidence submitted by the District after the hearing. They contend that the placement at Yellowstone proposed by the District would not provide B.J. with a free appropriate public education, as required by the IDEA. They argue that the three-day training by one staff member in ERP therapy is insufficient to implement B.J.'s IEP, and that it would not be safe for B.J. to attend Yellowstone.

In the motion now before the court, the plaintiffs seek to supplement the administrative record developed before the IHO with the following evidence:

1. B.J.'s current IEP developed as a result of a meeting convened on April 15, 2013, which details his current level of functioning and goals;

2. Expert testimony and documentation from B.J.'s treating psychiatrist and therapist, Dr. Shara Kronmal and Mr. Daniel Potter, limited to B.J.'s current functional performance and developments since the due process hearing;

3. Expert testimony and documentation from C. Alec Pollard, Ph.D., Director of the Anxiety Disorders Center at the Saint Louis Behavioral Medicine Institute and Clinical Chair of the International OCD Foundation's Behavior Therapy Training Institute regarding: the content covered at institute; the appropriateness of the training to prepare professionals for working with adolescents with severe OCD; the appropriateness of a participant immediately training other therapists in the implementation of ERP therapy; the training and experience necessary to implement an ERP therapy program for adolescents with severe OCD; appropriate therapies for adolescents with OCD; his knowledge of residential placements for students with severe OCD that use ERP therapy; and his work with adolescents who have severe OCD and how to manage the effects of their disability so that they can overcome their compulsions;

4. Testimony from Dr. Eula M. Crippen, the Clinical Program Manager at Yellowstone, limited to the following: her work at Yellowstone; her prior and current experience with students with severe OCD and providing ERP therapy; and her participation in the institute;

5. Testimony from Dr. Stephen Mandler, the Chief Medical Officer at Yellowstone, limited to the following: his experience and training with ERP therapy and students with severe OCD; his supervision of the clinical program at Yellowstone and its work with students with severe OCD; his expertise in the area of ERP therapy; and his conversations with

      Dr. Kronmal regarding Yellowstone's inexperience in providing ERP therapy and working with students with severe OCD; and,

6. Testimony from any Yellowstone staff members identified in answers to interrogatories or depositions with training in ERP therapy or experience with children with severe OCD.

In addition, the plaintiffs request to conduct discovery regarding their Rehabilitation Act claim, pursuant to Federal Rule of Civil Procedure 26.

## II. LEGAL STANDARD

The IDEA states that when a party aggrieved by the findings made by an IHO brings a civil action, "the court—(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The Seventh Circuit has explained that "a district court must independently determine whether the requirements of the [IDEA] have been satisfied," noting that "Congress specifically rejected language which would have made state administrative findings conclusive if supported by substantial evidence." *Patricia P. v. Bd. of Educ. of Oak Park*, 203 F.3d 462, 466 (7th Cir. 2000). Nonetheless, "because courts do not have special expertise in the area of educational policy, they must give 'due weight' to the results of the administrative decisions and should not substitute 'their own notions of sound educational policy for those of the school authorities which they review.'" *Id.* (quoting *Bd. of Educ. of Murphysboro v. Ill. Bd. of Educ.*, 41 F.3d 1162, 1166 (7th Cir. 1994)).

As the Seventh Circuit stated in *Monticello Sch. Dist. No. 25 v. George L. on Behalf of Brock L.*, "the determination of whether to allow additional evidence . . . 'must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo*.'" 102 F.3d 895, 901 (7th Cir.

1996) (quoting *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 791 (1st Cir. 1984)). The First Circuit's *Burlington* case, cited approvingly by the Seventh Circuit, recognized that "the source of the evidence" before the trial court "generally will be the administrative hearing record, with some supplementation at trial." 736 F.2d at 790. The First Circuit noted that reasons for supplementation "will vary" and could include "unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Id.*

### III. ANALYSIS

**A. Additional evidence**

The scope of the additional evidence the plaintiffs seek to introduce is limited to two general topics: (1) B.J.'s current functioning and goals, and (2) whether Yellowstone Boys and Girls Ranch is capable of providing appropriate ERP therapy to B.J. The plaintiffs argue that this court has the authority to hear the additional evidence because it is limited to developments occurring after the due process hearing, information unavailable at the hearing, and evidence that the IHO improperly excluded from the administrative record. The defendants respond that the additional evidence will improperly convert this proceeding into a trial *de novo*, and that the evidence is not the type of supplemental evidence allowed by the IDEA or *Burlington*. The court finds that the additional evidence is of the type appropriately considered under the IDEA and *Burlington*, and that it will assist the court in determining whether the requirements of the IDEA have been satisfied, without transforming this proceeding into a trial *de novo*.

The first category of evidence includes B.J.'s April 2013 IEP and testimony and documentation from his treating psychiatrist and therapist. Although the defendants argue that the 2013 IEP must have been presented first to an IHO before being disputed before this court,

7

the defendants misconstrue the purpose of this evidence. The plaintiffs are not challenging the IEP itself, but submit it as evidence of B.J.'s academic progress since the administrative hearing.

As to the testimony of B.J.'s treating psychiatrist and therapist, the defendants argue that these witnesses testified at length during the due process hearing and may not testify again. The plaintiffs respond that the subject matter of the testimony before this court of the treating psychiatrist and therapist will be limited to updating the court on B.J.'s current functional performance. The court concludes that this evidence is relevant and will allow the court to craft an order, potentially including prospective relief, that is appropriate in light of B.J.'s current needs. *See Burlington*, 736 F.3s at 791 ("[I]n many instances experts who have testified at the administrative hearing will be bringing the court up to date on the child's progress from the time of the hearing to the trial."); *see also Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 760 (3d Cir. 1995) ("Children are not static beings; neither their academic progress nor their disabilities wait for the resolution of legal conflicts."). The plaintiffs will therefore be allowed to submit as supplemental evidence the April 2013 IEP and the testimony of Dr. Kronmal and Mr. Potter.

The second category of evidence includes testimony and documentation about the nature of the training in ERP therapy provided by the International OCD Foundation's Behavior Therapy Training Institute, as well as testimony from Yellowstone Boys and Girls Ranch personnel about their work and experience with ERP therapy and students with severe OCD.

The defendants argue that the plaintiffs should have called Dr. Pollard of the International OCD Foundation to testify at the due process hearing, and accordingly should not be allowed to call him as a witness now. The *Burlington* court, however, declined to "disallow testimony from all who did, or could have, testified before the administrative hearing" because "a rigid rule to this effect would unduly limit a court's discretion and constrict its ability to form the

independent judgment Congress expressly directed." *Id.* at 790. The First Circuit noted that expert testimony is often "helpful in illuminating the nature of the controversy" and that a party might have "valid reasons for not presenting some or all expert testimony before the state agency," including the costliness of expert witnesses. *Id.* at 791.

The court concludes that Dr. Pollard's testimony is relevant to its evaluation of whether a three-day training in ERP therapy provided to a staff member could equip Yellowstone Boys and Girls Ranch to safely and appropriately address B.J.'s needs. The plaintiffs will be allowed to supplement the record with his testimony and related documentation.

As to the testimony of the Yellowstone personnel, the defendants argue that calling these witnesses is inappropriate because they too could have been called to testify at the administrative hearing. Again, under *Burlington*, witnesses are not necessarily barred from testifying before this court because they could have been called to testify before the IHO. The court also agrees with the plaintiffs that the need for this particular testimony was not apparent until after the due process hearing, when the IHO allowed the District to submit evidence as to how ERP therapy would be provided to B.J. at Yellowstone. The IHO did not give the plaintiffs an opportunity to respond to the District's submission. The plaintiffs persuasively argue that the evidence submitted by the District is of critical relevance to the question of whether Yellowstone is an appropriate placement for B.J., and that they should have an opportunity to respond to it. Therefore the plaintiffs will be allowed to present testimony from Drs. Crippen and Mandel and/or other Yellowstone staff members as to their training in ERP therapy and their experience treating children with severe OCD.

**B. Discovery related to the Rehabilitation Act Claim**

In Count II of the complaint, the plaintiffs bring a claim pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), alleging discrimination by the ISBE and State Superintendent Koch against students with severe OCD. They allege that the ISBE allows school districts to place students only in approved nonpublic special education programs, and that there are no approved programs for students with severe OCD.

The IHO lacked jurisdiction over the Rehabilitation Act claim. The ISBE has not responded to the plaintiffs' request to conduct discovery pursuant to Rule 26 related to the claim. In the court's minute order of April 15, 2013, the parties were directed to discuss a proposed discovery plan. Plaintiffs and the ISBE are hereby ordered to comply with the initial disclosure requirements set forth in Rule 26(a)(1)(A).

### IV. CONCLUSION

For the reasons discussed above, the plaintiffs' motion to supplement the administrative record and to conduct discovery pursuant to Rule 26 is granted. The plaintiffs and the ISBE shall exchange their initial disclosures within seven days of the entry of this order. All parties shall appear for a status hearing on September 10, 2013, at 9:30 AM. The plaintiffs and the District may contact the courtroom deputy with a mutually agreeable date for an evidentiary hearing.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 30, 2013