# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| B.J., and T.J. and J.J., Individually and as next friends of B.J., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 13 C 2585 |
| HOMEWOOD FLOSSMOOR CHSD #233, DR. VON MANSFIELD, in his Official Capacity as Superintendent; ILLINOIS STATE BOARD OF EDUCATION; CHRISTOPHER KOCH, in his Official Capacity as State Superintendent, | ) ) ) ) ) ) ) ) | Judge Joan B. Gottschall |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiffs B.J., a student in Defendant Homewood Flossmoor Community High School District #233 ("the District"), and T.J. and J.J., next friends of B.J., bring suit under the Individuals with Disabilities Education Act ("the IDEA"), 20 U.S.C. § 1400 *et seq.*, which requires states to provide a "free appropriate public education" to disabled children in exchange for federal funding. In Count I of the complaint, the plaintiffs challenge the appropriateness of the residential treatment placement that the District proposed to further B.J.'s individual education plan ("IEP"). In Count II, they bring a claim pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), alleging discrimination by the Illinois State Board of Education ("ISBE") and State Superintendent Christopher Koch against students with severe obsessive compulsive disorder ("OCD"). They claim that ISBE regulations do not allow reimbursement for placement of such students at any educational facility equipped to address their disability.

Now before the court is the motion of the ISBE and Superintendent Koch to dismiss Count II of the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). The ISBE argues that the plaintiffs lack standing to bring their Rehabilitation Act claim, and that the claims against Superintendent Koch and the ISBE are redundant. The plaintiffs do not object to the dismissal of the claim against Superintendent Koch, and that claim is dismissed. For the reasons explained below, the court denies the motion as to the ISBE.

## I. BACKGROUND

The background of this case was summarized in the court's August 30, 2013, opinion, addressing the scope of the evidence the plaintiffs may present in support of their IDEA claim. (*See* Mem. Op. & Order, Aug. 30, 2013, ECF No. 45.) In brief, after attempts to provide B.J. with educational services at home failed, the plaintiffs and the District agreed that a residential placement would be necessary to implement B.J.'s individual education plan ("IEP"). The plaintiffs proposed that B.J. attend a short-term residential program at a hospital in Wisconsin ("the OCD Center"), which the plaintiffs contend is the only facility they have located that can treat students with OCD as severe as that from which B.J. suffers. The OCD Center provides Exposure Response Prevention ("ERP") therapy, a form of cognitive behavior therapy for OCD. The parties agree that ERP therapy is necessary to implement B.J.'s IEP.

The District refused the plaintiffs' proposed placement and proposed that B.J. be placed at a residential facility in Montana. The plaintiffs objected to this placement and requested a due process hearing before an impartial hearing officer ("IHO"). After the hearing, the IHO concluded that the OCD Center was not an appropriate placement for B.J. because it was not a primarily educational facility. He further concluded that the Montana facility was an appropriate placement for B.J. The plaintiffs challenge those conclusions in their IDEA claim in Count I of

the complaint. They argue that the Montana facility is not an appropriate or safe placement for B.J. because it lacks staff with sufficient training in ERP therapy and experience in working with youth with severe OCD. They further argue that the OCD Center will provide instruction appropriate to meet B.J.'s IEP goals and is the only placement that will enable B.J. to make progress toward those goals.

With respect to the Rehabilitation Act claim in Count II of the complaint, the plaintiffs allege that ISBE is the state agency which administers public education in the state of Illinois and that, because ISBE receives federal financial assistance, it is subject to the requirements of Section 504 of the Rehabilitation Act. Pursuant to the Illinois School Code, the ISBE "promulgate[s] the rules and regulations for determining when placement in a private special education facility is appropriate." 105 Ill. Comp. Stat. 5/14-7.02. The ISBE's rules bar school districts from placing students in nonpublic programs which the ISBE has not approved. Under the ISBE's rules, a school district receives no reimbursement for students who are placed in a program that is not approved by the ISBE.

According to the complaint, the list of nonpublic special education programs approved by the ISBE contains no programs that provide ERP therapy. The plaintiffs allege that without such therapy, students with severe OCD are unable to access educational services and are denied the benefits of a free and appropriate public education, in violation of the Rehabilitation Act. Plaintiffs ask the court to "[o]rder that ISBE develop and implement a procedure to make reimbursable education placements not on its list of approved facilities, when they are necessary for students with severe disabilities to access a free appropriate public education." (Compl. at 17, ECF No. 1.) The ISBE has moved to dismiss the Rehabilitation Act claim for lack of standing.

## II. LEGAL STANDARD

Whether a plaintiff has standing to bring a lawsuit is a jurisdictional requirement that may be challenged through a motion made pursuant to Rule 12(b)(1). When deciding a motion to dismiss for lack of standing, the court accepts as true all material allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003). The plaintiff bears the burden of establishing the required elements of Article III standing. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "Those elements are (i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61)).

## II. ANALYSIS

The Rehabilitation Act provides, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). A plaintiff may bring claims under both the IDEA and the Rehabilitation Act, provided that the administrative remedies required by the IDEA are exhausted when the relief sought is also available under the IDEA. 20 U.S.C. § 1415.

The ISBE argues that the plaintiffs lack standing to bring a Rehabilitation Act claim against the ISBE because they cannot satisfy the second and third requirements for Article III standing: a causal relationship between their injury and the ISBE's conduct, and redressability

of that injury by a favorable decision. *Lee*, 330 F.3d at 468. According to the ISBE, the plaintiffs' alleged injury—the District's failure to place B.J. at the OCD Center—is not fairly traceable to the conduct of the ISBE. The ISBE regulations did not cause B.J. to be denied placement at the facility because those regulations played no role in the IHO's decisions that the OCD was not an appropriate placement for B.J., and that the Montana facility was appropriate.

In support of its argument, the ISBE cites two district court decisions from New York: *Yamen v. Board of Education of Arlington Central School District*, 909 F. Supp. 207, 209 (S.D.N.Y. 1996), and *M.M. v. Board of Education of the Waterville Central School District*, 963 F. Supp. 185, 189 (N.D.N.Y. 1997). Although these cases are neither recent nor from this circuit, they do present facts similar to those at issue here. In *Yamen*, the court concluded that parents of a disabled student lacked standing to challenge the state's denial of tuition reimbursement for the non-approved private school they preferred for their child. After a due process hearing, an impartial hearing officer had concluded that the private school was not an appropriate placement and denied the parents' request for tuition reimbursement. 909 F. Supp. at 210. In *M.M.*, the court granted summary judgment for the New York State Department of Education, holding that a hearing officer's decision that a private placement was inappropriate for a student prevented the plaintiffs from demonstrating a nexus between their alleged injury and the state's refusal to reimburse placements at non-approved private schools. 963 F. Supp. at 190. In both cases, the courts concluded that the decision of the hearing officer, not the state regulations, was the actual cause of the plaintiffs' alleged injuries, and that the plaintiffs therefore lacked standing to challenge the regulations. The ISBE argues that similarly, here, the plaintiffs' inability to secure their preferred placement at the OCD Center was caused not by the

5

ISBE regulations allowing reimbursement only for approved residential programs, but by the IHO's decision that the OCD Center was not an appropriate placement for B.J.

The plaintiffs respond that they have alleged an injury—the denial of an appropriate educational placement for B.J.—that is fairly traceable to the ISBE's conduct. They point out that the Supreme Court held in *Bennett v. Spear* that the actions or policies of a defendant need not be the "last step in the chain of causation," but may have had a "determinative or coercive effect upon the action of someone else." 520 U.S. 154, 169 (1997). They argue that the ISBE's regulations, which allegedly discriminated against students with severe OCD by disallowing reimbursement of any facility equipped to provide ERP therapy to such students, had "coercive" and "determinative" effects that lead to their injury.

According to the plaintiffs, the District refused to place B.J. at the OCD Center because it was not on the ISBE's list of approved nonpublic placements. Had the OCD Center been on the list, the District would have placed B.J. there, as it was the only available facility that could provide treatment and instruction for a student with B.J.'s condition. The ISBE refused to approve the OCD Center as a residential facility because it did not provide sufficient daily classroom time, even though, according to the complaint, B.J.'s condition prevents him from participating in a classroom setting for more than short periods of time. Thus, the ISBE's failure to approve any facility equipped to treat B.J.'s condition prevented him from accessing educational benefits.

The court acknowledges that the traceability and redressability prongs of the standing analysis are problematic when a third party must act in order for an injury to arise or be redressed, or when an independent decision precludes relief to a plaintiff. The facts alleged in

this case, however, are sufficient to make the plaintiffs' injury fairly traceable to the ISBE's failure to approve any program that can treat students with severe OCD.

Accepting the allegations in the complaint as true and drawing all inferences in favor of the plaintiffs, no residential program can simultaneously meet the requirements of the ISBE, which include a minimum of five hours of classroom instruction a day, and also provide an appropriate education for a student with severe OCD who cannot participate in a classroom setting for such a long period of time. Because a school district receives no reimbursement for students who are placed in a program that is not approved by ISBE, no district will place a student with severe OCD in a residential program that can meet his needs. It was these regulations that caused the District to object to the plaintiffs' proposed placement for B.J.

The court acknowledges the factual similarities between this case and *Yamen* and *M.M.*, but it finds those cases distinguishable for two reasons. First, drawing inferences in the plaintiffs' favor, the court finds that the District's refusal to place B.J. at the OCD Center was a direct result of the ISBE's failure to approve it as a residential placement. In other words, had the ISBE approved the OCD Center, the District would have agreed to place B.J. there, and the due process hearing before the impartial hearing officer would not have been required. Second, in the New York cases, the state failed to approve the specific private placement preferred by the plaintiffs, but other placements had been approved by the state that could have provided the students in question with an appropriate education. In this case, however, the complaint alleges that the OCD Center is the *only* facility that can provide B.J. with an appropriate education. The ISBE has not approved any program that is appropriate for students with severe OCD. As a result, any student with B.J.'s condition will be required to seek the intervention of an IHO and possibly a district court in order to secure the educational benefits guaranteed by the

7

Rehabilitation Act. The student will be denied the benefits of an education during the often-lengthy time required to engage in that process. The court concludes that the allegations in the complaint are sufficient to make the plaintiffs' injury fairly traceable to the ISBE's failure to approve a residential placement appropriate for students with severe OCD.

Finally, the court concludes that the plaintiffs have also satisfied the redressability requirement for Article III standing. The plaintiffs have asked the court to order the ISBE to implement a procedure to make non-approved facilities reimburseable when necessary to allow students with severe disabilities such as B.J.'s to access a free appropriate public education. Were this request granted and reimbursement for the placement at the OCD Center ensured, the District would likely agree to place B.J. there. The plaintiff's injury would be redressed. The ISBE's motion to dismiss Count II of the complaint is therefore denied.

### III. CONCLUSION

For the reasons explained above, Count II of the complaint is dismissed against Superintendent Koch, but the ISBE's motion to dismiss Count II for lack of standing is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: November 26, 2013

8